# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| Audrel Jack Watson,<br>　　Plaintiff,<br><br>v.<br><br>Neal Graves, et al.,<br>　　Defendants. | 1:15cv1214 (LMB/TCB) |

## MEMORANDUM OPINION

Audrel Jack Watson, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that he was subjected to unconstitutional conditions of confinement during his former detention at Lawrenceville Correctional Center ("LVCC").[1] The matter is before the Court on a Motion for Summary Judgment filed by remaining defendants Warden Ed Wright, Unit Manager Neal Graves, and Unit Manager R. E. Clarke. [Dkt. No. 30][2] Defendants submitted a memorandum of law with supporting exhibits, and provided plaintiff with the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 31] After receiving an extension of time, Watson submitted his Opposition to Motion for Summary Judgment [Dkt. No. 37], defendants filed a reply [Dkt. No. 38], and plaintiff filed a sur-reply. [Dkt. No. 39] Accordingly, this matter is ripe for disposition. After careful consideration of these submissions, defendants' Motion for Summary Judgment will be granted.

---

[1] Plaintiff is now confined at Augusta Correctional Center.

[2] By an Order entered February 15, 2017, plaintiff's claims against Harold Clarke, the Director of the Virginia Department of Corrections, and the "unknown chief executive officer of GEO" were dismissed pursuant to §1915A for failure to state a claim. [Dkt. No. 19]

## I. Background

In the amended complaint, which is the operative complaint in the lawsuit [Dkt. No. 15], Watson contends that lack of access to toilet facilities during exercise periods at LVCC amounted to an Eighth Amendment violation. He alleges that during his incarceration at LVCC he was "forced to choose between exercise (inside or outside) or staying in [his] cell[] 24/7/365, where toilet facilities are present." Id. at Att. p. 3. According to plaintiff, during inside pod exercise periods officers in the booth would not let an inmate back into his cell to use the toilet facilities, "no matter how much he beg[ged] and plead[ed] ...." Id. As for outdoor exercise periods, plaintiff states that no "gate breaks" were provided from Monday through Friday, and even when they were made available plaintiff and other inmates often were deprived of access to toilet facilities for up to two hours. Id. at Att. p. 4. Plaintiff alleges that his inability to relieve himself for these "long periods of time" caused him to suffer "extreme and excruciating pain," and that the resulting necessity of urinating in the showers made him feel "untold amounts of humiliation, embarrassment, and emotional trauma." Id. at Att. p. 5. Plaintiff suggests that the situation could have been alleviated by the installation of Port-a-Johns on the outside recreation yard, but defendants refused to do so. Watson claims that as a result he and other LVCC inmates were "forced to choose between sanitation or exercise." Id. at Att. p. 15. As relief, plaintiff seeks an award of compensatory and punitive damages. Id. at Att. pp. 24-25.

Defendants have submitted exhibits which demonstrate the following material facts. Inmates at LVCC are offered time in the outdoor recreation yard twice a day, typically from approximately 9:00 a.m. to 10:30 a.m. and again from approximately 2:00 p.m. to 3:30 p.m. Decl. of Graves, Def. Ex. A ¶ 5; Decl. of Wright, Def. Ex. B ¶ 4. During these periods correctional officers patrol the perimeter fencing of the yard and observe the inmates inside. Def.

Ex. A ¶ 7; Def. Ex. B ¶ 5. About 30 to 45 minutes after a recreation period begins, an officer provides a "gate break" during which inmates may leave the yard for any reason, including use of a restroom; however, an inmate who does so may not return to the yard during that session. Additionally, an inmate who wishes to leave the yard at another time may ask the officers patrolling the perimeter to let him out, and the officers may or may not accommodate such a request at their discretion. Def. Ex. A ¶ 8; Def, Ex. B ¶ 8.

There are no restrooms in the LVCC recreation yard. Port-a-Johns would constitute a security threat because they would hinder correctional officers' ability to observe the inmates. Urination and defecation are not permitted in the yard, and an inmate who does so generally is given a disciplinary charge. Def. Ex. A ¶ 9; Def, Ex. B ¶ 6-7.

An inmate also has the option of remaining in the day room of his housing unit for recreation. Every hour, on the hour, inmates in each housing unit receive a "door break" during which all cells are unlocked for five minutes and inmates are permitted free access to enter and leave their cells. This provides an opportunity for inmates to use the toilets. Def. Ex. A ¶ 13; Def, Ex. B ¶ 10. At all other times an inmate may obtain access to his cell by pushing an intercom button and requesting the Booth Officer stationed in the housing unit's control room to open his cell door remotely. Def. Ex. A ¶ 10; Def, Ex. B ¶ 9-10. An inmate who does so must remain in his cell until the next door break occurs. Def. Ex. A ¶ 14. Additionally, for security reasons he must wait to be let into his cell until a Floor Officer or a Sergeant can be present, which at times can take up to 20 minutes. Def. Ex. A ¶ 15; Def, Ex. B ¶ 11.

In response to defendants' summary judgment motion, plaintiff filed an Opposition to Motion for Summary Judgment which he signed under penalty of perjury. [Dkt. No. 37 at p. 48] Plaintiff takes issue with many of defendant's factual assertions by declaring them to be untrue

and false, and he supports his position by pointing to his statements in the amended complaint. Id. at 1. It is settled that the nonmoving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This is true even where the nonmoving party in such a situation is a pro se prisoner entitled to liberal construction of his pleadings; a "declaration under oath ... is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406 - 07 (D.C. 1994). Here, the factual allegations in plaintiff's Opposition amount to nothing more than a conclusory recapitulation of the amended complaint, without additional supporting evidence. Thus, plaintiff's pleading is insufficient to defeat defendants' summary judgment motion. Doyle v. Sentry Ins., 877 F.Supp.1002, 1005 (E.D. Va. 1995) (Merhige, J.) (to defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations or denials contained in the pleadings.")

Similarly, plaintiff in his sur-reply [Dkt. No. 39] asserts that much of what defendants state in their summary judgment motion and supporting affidavits is false, but his assertions are unsupported by any evidence.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a

4

moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). An issue of material fact is genuine when "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

### III. Analysis

Defendants argue that they are entitled to summary judgment on several grounds, all of which are meritorious. The threshold and dispositive consideration is that Watson admittedly failed to exhaust his administrative remedies for his present claim. Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). As has been recognized previously in this district, "the PLRA amendment made [it] clear that exhaustion is now mandatory." Langford v. Couch, 50 F.Supp.2d 544, 548 (E.D. Va. 1999). A prisoner now must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy or effective, Porter v. Nussle, 534 U.S. 516, 524 (2002), and even if exhaustion would be futile because it would not provide the relief the inmate seeks. Davis v. Stanford, 382

F.Supp.2d 814, 818 (E.D. Va.), aff'd, 127 Fed. App'x 680 (4th Cir. 2005).

The PLRA requires "proper" exhaustion, which demands "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93. Proper administrative exhaustion requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004). The benefits of proper exhaustion are realized only if the prison grievance system is given a "fair opportunity to consider the grievance" which will not occur "unless the grievant complies with the system's critical procedural rules." Id. at 95; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Plaintiff, as a Virginia inmate, was required to exhaust the claims raised in the instant complaint in accordance with the Virginia Department of Corrections ("VDOC") grievance procedures provided in VDOC Operating Procedure ("OP") 866, which provides multiple levels of administrative remedies in the form of inmate grievances. Per OP 866-7.13, an inmate must first attempt to resolve any issues informally. Prison officials must respond to the inmate's complaint within fifteen days of receiving an informal complaint. See OP 866-7.13. After seeking informal resolution, an inmate may file a regular grievance to the warden or superintendent. The grievance must be filed within thirty days of the underlying incident or occurrence. See OP 866-7.14. Depending on the subject of the grievance, up to two additional levels of review by higher authorities within VDOC may be available following the filing of a regular grievance. See OP 866-7.15.

It is uncontroverted in this case that plaintiff failed to follow this procedure with respect to his present claim. On April 12, 2013, he filed an Informal Complaint regarding the lack of Port-a-Johns on the recreation yard at LVCC. Plf. Ex.16A; Def. Ex. E. On April 22, 2013, Unit

Manager Clarke timely responded: "Gate breaks are given for the purpose of restroom breaks. 'Port-a-Johns' would not be feasible for security purposes. These would hinder observation." Id.

On May 2, 2013, Watson filed a Regular Grievance stating that Clarke was "wrong" about the gate breaks because "[e]verybody tells me they are few and very far between," and "Port-a-Johns are very much needed." Plf. Ex. 16B. The grievance was returned to Watson on May 3 because he had raised a new issue regarding gate breaks that was beyond the scope of the Informal Complaint, and it consequently was not logged. Plf. Ex. 16C. At that juncture Watson either could have appealed the intake decision to the Regional Ombudsman or he could have submitted a proper Regular Grievance on or before May 12, 2013, but he did neither. Def. Ex. C ¶ 10.

On January 22, 2015, Watson filed an Informal Complaint stating that the Booth Officer would not let him back into his cell without a Floor Officer being present, and "visits to pods by C/O's can vary from 45 minutes to 1½ hours." Plf. Ex. 17C. On that same day Unit Manager Graves responded that "the control booth operator [illegible] open your door if there is an officer available" and advised Watson that if he had a problem that required him to use the bathroom he needed to be aware of it. Id. The Regional Ombudsman upheld that decision on February 9, 2015. Id. Meanwhile, on January 29, 2015, Watson submitted a Regular Grievance stating that Graves' response to the January 22 Informal Complaint was "barely if not impossible to read" and arguing that the failure to provide "restroom in pod or allow inmates in their cells when they need to go" was "illegal." Plf. Ex. 17A. The grievance was returned to Watson on January 29 because he had raised new issues regarding Graves' response and the lack of restrooms in the pod that had not been raised in the Informal Complaint. Id. The Regional Ombudsman also upheld that decision on February 9, 2015. Id. Watson could have filed a proper Regular Grievance on

or before February 21, 2015 but he did not do so. Def. Ex. C ¶ 12.

Under these circumstances, "proper" exhaustion of plaintiff's claim of unconditional conditions of confinement was not achieved. Woodford, 548 U.S. at 90-91, 93. Indeed, in the amended complaint, plaintiff concedes in regard to the grievance process that he "did exactly what they wanted" and "gave up and didn't complete some of the administrative remedies." Am. Compl., Att. p. 9. Plaintiff's protestations in his sur-reply that the explanation of the grievance procedure in the Offender Handbook he received on his admission to LVCC was "nebulous" and that he never received a copy of OP 866.1 are unavailing. Plaintiff has provided copies of numerous offender requests, grievances and informal complaints that he filed regarding his dental care at LVCC that demonstrate his familiarity with the administrative grievance process. Dkt. No. 1, Ex. 1 - 15. His failure to receive a copy of OP 866.1 itself is of no consequence, because its requirements are stated on the VDOC grievance forms themselves. Therefore, as defendants' undisputed evidence demonstrates that Watson failed properly to exhaust administrative remedies before filing this lawsuit, they are entitled to summary judgment on that basis. See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674 (4th Cir. 2005) (courts have no discretion to dispense with exhaustion requirement in cases where PLRA applies).

Even if Watson had exhausted administrative remedies, the component of his claim challenging the lack of access to toilets on the LVCC recreation yard would be time-barred. An action arising under § 1983 borrows the forum state's limitations period for personal injury actions. Owens v. Okure, 488 U.S. 235, 249-50 (1989). Virginia's limitations period for personal injury claims is two years. Va. Code § 8.01-243(A). Although the limitations period is borrowed from state law, "federal law governs the date on which that limitations period begins to run." Owens v. Baltimore City State's Att'y's Office, 767 F.3d 379, 388 (4th Cir. 2014). A cause

of action accrues under federal law when the plaintiff "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." United States v. Kubrick, 444 U.S. 111, 122-24 (1979).

Here, it is incontrovertible that Watson was aware of the facts underlying his claim regarding toilet access in the LVCC recreation yard by April 12, 2013, because on that date he submitted an Informal Complaint concerning the situation to Unit Manager Clarke. Plf. Ex.16A; Def. Ex. E. He followed with a Regular Grievance regarding the same matter on May 2, 2013 which was returned to him the following day. Plf. Ex. 16B - 16C. By then Watson clearly knew or had reason to know of the injury giving rise to his present cause of action. Nonetheless, he did not file the complaint in this action until August 31, 2015,[3] over two years and three months later. Therefore, the portion of his claim relating to lack of access to toilets on the LVCC recreation yard is time-barred.

Lastly, even if plaintiff's claims did not suffer from the foregoing impediments, he would still be entitled to no relief because the undisputed facts establish that he suffered no violation of his rights under the Eighth Amendment. To state a *prima facie* Eighth Amendment claim for unlawful conditions of confinement, a plaintiff must allege facts sufficient to show: 1) a serious deprivation of a basic human need and 2) that jail officials were deliberately indifferent to that need. Wilson v. Seiter, 501 U.S. 294, 300 (1991); Shakka v. Smith, 71 F.3d 162, 165 (4th Cir. 1995). Only extreme deprivations will make out an Eighth Amendment claim, and it is plaintiff's burden to allege facts sufficient to show that the risk from the conditions of his

---

[3]For federal purposes, a pleading submitted by an incarcerated pro se litigant is deemed filed when it is delivered to prison officials for mailing. Houston v. Lack, 487 U.S. 266 (1988). In this case, Watson executed the complaint on August 31, 2015 [Dkt. No. 1 at 47] and in the absence of evidence to the contrary the Court assumes it was delivered for mailing that same day.

confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. Hudson v. McMillian, 503 U.S. 1, 8 (1992); Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993). To meet the second prong, plaintiff must allege facts sufficient to show that defendants were deliberately indifferent, that is, that they knew of facts from which an inference could be drawn that a "substantial risk of serious harm," was posed to his health and safety, that they drew that inference, and then disregarded the risk posed. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The evidence submitted by the defendants establishes that, absent rare and extraordinary circumstances, Watson was able to access a toilet during "gate breaks" while he was on the recreation yard; a recreation session lasted about an hour and a half, and a "gate break" generally was provided approximately 30 to 45 minutes after the start of each session. When Watson opted to remain in the day room, he had access to the toilet in his cell during the hourly "door breaks," and he could request entry to the cell at other times from the Booth Officer.

Watson does not take serious issue with these facts. He states in the Amended Complaint that "gate breaks" on most days were provided hourly in the recreation yard. Am. Compl. ¶ 2. He then asserts, incongruously, that he was "often" required to wait for 1.5 to 2 hours to access a toilet. Significantly, at no point in his pleadings does Watson allege that he was required to wait longer than 2 hours before being allowed to use a toilet. Am. Compl. at Att. p. 3-4; Opposition at 30; Sur-reply at 7. Assuming for the purposes of this discussion that Watson was regularly required to wait a full two hours to access a toilet during the recreation periods at LVCC, he was not subjected to an unconstitutional condition of confinement.

"[T]he Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets." Abdur-Reheem-X v. McGinnis, 1999 WL 1045069, at *2 (6th Cir. 1999).

"Temporary restrictions on bathroom use, even ones lasting several hours, do not constitute the wanton infliction of pain or exhibit deliberate indifference to a prisoner's health or safety." Rouse v. Caruso, 2011 WL 918327 (E.D. Mich. Feb. 18, 2011). In Trevino v. Jones, 2007 WL 710213 (N.D. Okla. Mar. 6, 2007), the plaintiff alleged as Watson does here that his Eighth Amendment rights were violated when he was given limited access to the restroom while "confined in the recreation yard." In that instance inmates were "given bathroom breaks only twice a day during their eight-hour outside shift." The court awarded summary judgment to the defendants on the holding that "while waiting to go to the bathroom for several hours is certainly uncomfortable, it does not constitute a 'deprivation[] denying the minimal civilized measure of life's necessities.'" Id. (quoting Wilson, 501 U.S. at 298). It concluded that "as a matter of law, plaintiff's opportunity to go to the bathroom two times during an eight-hour period does not constitute cruel and unusual punishment." Finally, in DePaola v. Ray, 2013 WL 4451236 (W.D. Va. July 22, 2013), an inmate alleged that his Eighth Amendment rights were violated when he was denied bathroom access for five hours while being transported to and attending a court hearing. Although plaintiff told the defendants he needed to use a restroom, they responded that he could not do so until he was returned to his institution. The court held that "the denial of bathroom privileges for just over five hours while being transported between prisons is not a denial of a minimal measure of life's necessities," and that plaintiff's "claim that he suffered extreme, sharp bladder pain [was] insufficient to state a serious or significant injury resulting from the alleged denial of restroom privileges for approximately five hours."

The facts of this case, even as alleged by Watson, are less extreme than those described in the foregoing authorities. Because Watson has no constitutional right to unfettered access to a toilet, he has failed to show that the restrictions placed upon such access during recreation

11

periods at LVCC constituted a "denial of a minimal measure of life's necessities." Moreover, the alleged fact that he suffered discomfort and embarrassment as a result of the restrictions falls short as a matter of law. "[I]f a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged conditions, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment." DePaola, 2013 WL 4451236 at *10 (citing Strickler, 989 F.2d at 1381). For these reasons, even if Watson's claim had been administratively exhausted and were not partially time-barred, defendants still would be entitled to summary judgment on the merits of the claim.

## IV. Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment will be granted, and final judgment will be entered in their favor. An appropriate Order and Judgment shall issue.

Entered this 6th day of October 2017.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge